**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**EVELYN THOMPSON**                                                              **PLAINTIFF**

**v.**                          **Case No.  1:14-cv-00041 KGB**

**CONAGRA FOODS, INC., EMPLOYEE
BENEFITS ADMINISTRATIVE
COMMITTEE, and CONAGRA FOODS, INC.
LONG-TERM DISABILITY PLAN X60**                          **DEFENDANTS**

**OPINION AND ORDER**

Plaintiff Evelyn Gayle Thompson brings this action against ConAgra Foods, Inc., the Employee Benefits Administrative Committee, and the ConAgra Foods, Inc. Long-Term Disability Plan X60 (collectively the "ConAgra defendants") to recover long-term disability benefits allegedly owed to her under the ConAgra Foods, Inc. Long-Term Disability Plan X60 (the "Plan"), an employee benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  Before the Court is Ms. Thompson's motion for judgment on the administrative record (Dkt. No. 47), to which the ConAgra defendants have responded (Dkt. No. 50) and Ms. Thompson has replied (Dkt. No. 51).  For the following reasons, the Court grants the ConAgra defendants' motion for judgment.

**I.      Background**

Ms. Thompson worked for ConAgra for over 30 years, beginning as a bookkeeper and eventually serving as the controller of the ConAgra frozen food plant in Batesville, Arkansas (Dkt. No. 47, at 1).  As an employee, Ms. Thompson participated in the Plan, which entitled her to benefits in the event she became disabled.  The terms of the Plan provide that "disability" means:

(a) during the Elimination period and the next 24 months of Disability you are, as a result of Injury or Sickness, unable to perform the Material and Substantial Duties of your Own Occupation, and (b) for the remainder of the maximum benefit period you are, as a result of Injury or Sickness, unable to perform with reasonable continuity the Material and Substantial Duties of Any Occupation.

(Dkt. No. 50, at 4).  The Plan defines "Any Occupation" as "any occupation a participant becomes reasonably fit to perform based on training, education, experience, age, physical and mental capacity" (Dkt. No. 50, at 4).

Ms. Thompson was first diagnosed with breast cancer in 2000.  She underwent a mastectomy, which successfully removed the cancerous tissue (Dkt. No. 47, at 3).  The breast cancer returned in 2005, but the cancer went into remission after Ms. Thompson underwent surgery and chemotherapy.

In August 2007, Ms. Thompson began to experience fatigue and exhaustion (Dkt. No. 47, at 4).  Her last day of work at ConAgra was June 2, 2008 (Dkt. No. 50, at 2).  On June 3, 2008, she had an ejection fraction of ten percent, and she was later diagnosed with cardiomyopathy and congestive heart failure (Dkt. No. 47, at 4).  Eventually, doctors implanted a biventricular implantable cardiac defibrillator.

Ms. Thompson continues to have health issues, some of which the ConAgra defendants dispute (Dkt. No. 47, at 4; No. 50, at 14-15).  Ms. Thompson also suffers from mental health issues, including anxiety, depression, mood disorders, and post-traumatic stress disorder ("PTSD"), some of which the ConAgra defendants also dispute (Dkt. No. 47, at 4; No. 50, at 15-16).

On December 2, 2008, Ms. Thompson was granted long-term disability benefits under the Plan (Dkt. No. 50, at 5) after Dr. Robert Morrision, who reviewed the case for ConAgra, concluded that "she was disabled . . . and that her condition 'rarely improves'" (Dkt. No. 47, at

2

2).  From 2008 to May 13, 2013, she continued receiving disability benefits.  In 2009, she was also awarded Social Security Disability benefits (Dkt. No. 47, at 2).

The Plan requires participants occasionally to provide proof of disability in order to continue receiving benefits.  ConAgra approved Ms. Thompson's eligibility for benefits several times from 2008 to 2013 (Dkt. No. 47, at 2-3).  However, on May 13, 2013, ConAgra informed Ms. Thompson that she "no longer met the definition of 'Disabled' under the LTD Plan" after determining that, even with her health issues, she could work as a treasurer or department manager in Batesville, Arkansas (Dkt. No. 50, at 10).  She appealed the denial of her claim for future benefits (Dkt. No. 50, at 11), and her appeal was denied on January 6, 2014 (Dkt. No. 50, at 16).  Rather than file a second appeal request, which she was entitled to do under the Plan, Ms. Thompson sought judicial review of the decision in the Circuit Court of Independence County, Arkansas (Dkt. No. 47, at 3).  Her action was removed to this Court.

## II.    The Review Process

The Plan provides that, in order to receive disability benefits, the employee must furnish proof of disability and that the employee requires the regular attendance of a physician (AR 803). Benefits under the Plan continue for the duration of the disability, so long as the employee provides to the Plan Administrator proof of continued (1) disability; (2) regular attendance of a physician; and (3) appropriate available treatment (AR 803).  Proof must be provided upon request by the Plan Administrator.

### A.    Initial Review

On January 3, 2013, CIGNA Group Insurance ("CIGNA"), the designated Plan Administrator, notified Ms. Thompson that it would be reviewing her disability status (Dkt. No. 50, at 6).  In its notification, CIGNA also:  (1) requested that Ms. Thompson provide her

physician's treatment plan and medical information pertaining to her diagnosis and functional abilities; (2) asked that she complete a Disability Questionnaire and Activities of Daily Life Form; and (3) notified Ms. Thompson that it intended to contact her medical providers and obtain information from them.  Ms. Thompson completed and returned the questionnaire and form.  She also spoke with a CIGNA representative about her claim on February 22, 2013, and during that conversation she indicated that she was both mentally and physically disabled (AR 82).  After speaking with Ms. Thompson, CIGNA representatives made two supplemental requests for additional information and authorization to obtain certain medical records (Dkt. No. 50, at 7).

CIGNA assigned four individuals, including a claims manager, to conduct its initial review of Ms. Thompson's claim (Dkt. No. 50, at 8).  A Nurse Case Manager ("NCM") reviewed Ms. Thompson's claim file, which included:  (1) a mental diagnostic evaluation conducted on April 30, 2009, by Dr. Glen Adams for the purpose of determining Ms. Thompson's eligibility for Social Security Disability benefits; (2) Ms. Thompson's echocardiogram from July 2012; (3) office visit notes from 2012 to 2013 from Dr. Robert Walton, Ms. Thompson's primary care physician; (4) a letter dated April 8, 2013, from Dr. Walton in which he concluded that Ms. Thompson was "medically disabled as a result of an associated anxiety disorder with associated depression that followed the manifestations of her cardiac illness in 2008;" and (5) an office visit note from Dr. Francis Gilliam, Ms. Thompson's cardiologist, dated February 27, 2013 (Dkt. No. 50, at 8).  After reviewing the file, the NCM, a licensed professional counselor and behavioral health specialist, issued a report concluding that Ms. Thompson's "medical records did not support restrictions and limitations related to mental health issues" (Dkt. No. 50, at 9).

A board-certified psychiatrist reviewed Ms. Thompson's claim file and the NCM's report. The psychiatrist concurred with the NCM, finding that "the medical data did not support any restrictions" (Dkt. No. 50, at 9). In doing so, he rejected Dr. Adams' diagnosis that Ms. Thompson suffered from PTSD because "[f]irst, Dr. Adams failed to identify any specific trauma to support a diagnosis of PTSD, and second, the objective tests performed by Dr. Adams revealed that Plaintiff's mental status was within normal limits, indicating no cognitive impairment" (Dkt. No. 50, at 9).

CIGNA's initial review also included analysis from a Rehabilitation Specialist, who conducted a "Transferable Skills Analysis" to determine whether Ms. Thompson's restrictions and limitation prevented her from performing "any occupation," as defined by the Plan (Dkt. No. 50, at 9-10). The Rehabilitation Specialist concluded that Ms. Thompson could work as a treasurer or department manager in the current labor market in Batesville, Arkansas, based on her medical conditions and job qualifications.

After completing the initial review, CIGNA notified Ms. Thompson that her claim was closed because it was determined that she was no longer "disabled" under the Plan (Dkt. No. 50, at 10-11). CIGNA offered Ms. Thompson the opportunity to appeal and informed her that she could submit comments and additional documentation, including medical records, which would be considered during the review process.

### B.    Appeal

Ms. Thompson appealed after CIGNA's initial review by submitting a letter from her attorney; additional medical records from Cardiology Associates of Northeast Arkansas and Arrhythmia Associates of Northeast Arkansas; and a letter signed by Dr. Walton (Dkt. No. 50, at 11-12). Her file, including this additional documentation, was reviewed by an "Appeals

Specialist, Board Certified Psychiatrist, and Board Certified Internal Medicine/Occupational Medical Physician" (Dkt. No. 50, at 16).  Both doctors reviewing the file were independent from CIGNA's claims review process (Dkt. No. 50, at 15-16).

Dr. Matthew Lundquist, the Internal Medicine/Occupational Medical Physician, reviewed all of Ms. Thompson's available medical records, conducted a peer-to-peer phone call with Dr. Walton, and attempted to contact Dr. Gilliam (Dkt. No. 50, at 14).  Dr. Lundquist concluded that Ms. Thompson "was not 'physically functionally limited due to her history of breast cancer, cardiomyopathy, and Sjogren's syndrome' and that there was 'a lack of clinical evidence in the medical records provided for review to support any medically necessary work activity restrictions'" (Dkt. No. 50, at 14).

Dr. Roy Sanders, a Board Certified Psychologist, evaluated Ms. Thompson's eligibility for disability based on her mental health.  Dr. Sanders reviewed the medical records provided by Ms. Thompson, and found that:  "(1) the records did not include a comprehensive mental status exam, (2) the records did not discuss Plaintiff's symptoms, nor did they identify any specific psychiatric or psychological concern, and (3) the data available was 'so very sparse' that essentially no medical evidence existed to support a diagnosis of cognitive, mental, or behavioral impairment from May 14, 2013 onward" (Dkt. No. 50, at 16).

Based on Dr. Lundquist and Dr. Sanders' reports, as well as reviewing Ms. Thompson's complete file, CIGNA upheld its denial of Ms. Thompson's claim for ongoing benefits.  Specifically, CIGNA found that "the medical evidence provided did not support limitations and restrictions that would prevent Plaintiff from performing the duties of Any Occupation" (Dkt. No. 50, at 16).  CIGNA informed Ms. Thompson that she had the option of filing a second appeal request and suggested that she consider providing medical records including "a

neuropsychological/psychological evaluation, a mental status exam, and/or, a functional capacity exam" (Dkt. No. 50, at 17).  Rather than file a second appeal, Ms. Thompson initiated this action.

### III.     Standard of Review

Where the plan gives the plan administrator "discretionary authority to determine eligibility for benefits," the Court reviews the administrator's decision for abuse of discretion. *Anderson v. U.S. Bancorp*, 484 F.3d 1027, 1032 (8th Cir. 2007) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  Ms. Thompson and the ConAgra defendants agree that the appropriate standard of review in this case is abuse of discretion (Dkt. Nos. 47, at 5; 50, at 18).

Under the abuse of discretion standard, the Court considers "whether the administrator abused its discretion—that is, whether its interpretation of the plan was reasonable, and whether its decision was supported by substantial evidence." *Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833, 838 (8th Cir. 2006).  Substantial evidence is "more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000).  If the Court finds that a decision was supported by substantial evidence, "it should not be disturbed even if a different, reasonable interpretation could have been made." *Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 989 (8th Cir. 2014).

### IV.     Review for Abuse of Discretion

Ms. Thompson argues that the ConAgra defendants' decision was unreasonable and not supported by substantial evidence because it "relied almost exclusively" on Dr. Lundquist and Dr. Sanders' medical reports, which she claims "are deeply flawed and should be given no weight" (Dkt. No. 47, at 7).  Specifically, she contends that "Dr. Lundquist summarily dismissed Dr. Walton's opinions" as to Ms. Thompson's eligibility under the Plan, while "fail[ing] to

provide any explanation of his opinions" (Dkt. No. 47, at 8). Similarly, she maintains that Dr. Sanders' report is "specious" because she alleges that it contains incorrect statements of fact and "summarily concluded that Mrs. Thompson's treating medical professionals were wrong" without providing an explanation for the basis of that conclusion (Dkt. No. 47, at 9). She argues that both Dr. Lundquist and Dr. Sanders failed to point to "specific evidence to indicate that Dr. Walton or Dr. Adams's diagnoses and opinions were inaccurate" and "hand-picked the records upon which they relied" (Dkt. No. 47, at 9-10). According to Ms. Thompson, the ConAgra defendants' reliance on this "paper review" was arbitrary and capricious (Dkt. No. 47, at 9).

Ms. Thompson also argues that the ConAgra defendants' decision was unreasonable because "[t]he review upon which the denial was based focused on peripheral mental health issues rather than Mrs. Thompson's extensive history of serious cardiac conditions" (Dkt. No. 51, at 1). She asserts that the ConAgra defenadnts "all but ignored the physical basis for Mrs. Thompson's disability" and that "ConAgra devoted its entire review of Mrs. Thompson's claim to an analysis of peripheral mental health conditions and subsequently used that review in an attempt to gain traction for denial of her claim" (Dkt. No. 51, at 3). For these reasons, she argues that the ConAgra defendants abused their discretion in denying her claim.

The Court finds that the ConAgra defendants did not abuse their discretion in denying Ms. Thompson's claim. Under the terms of the Plan, Ms. Thompson has the burden of producing sufficient proof that she continues to be disabled in order to receive benefits (AR 803). For the following reasons, a reasonable person *could* have found that she failed to prove that she was unable to work in "any occupation." *Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 805 (8th Cir. 2014).

The ConAgra defendants conducted a "full and fair review" before denying Ms. Thompson's appeal. *Id.* at 805-06. The ConAgra defendants, acting through the designated Plan Administrator, "considered all comments, medical records, and other information supplied by Plaintiff" (Dkt. No. 50, at 19). Ms. Thompson argues that, in its initial review of her claim, the ConAgra defendants "did not consult with her physicians, nor did it obtain an independent medical opinion from any other medical professional" (Dkt. No. 47, at 7). However, the ConAgra defendants obtained two independent medical opinions and consulted, or attempted to consult, her physicians during the appeal of its initial decision (Dkt. No. 50, at 14). Therefore, Ms. Thompson fails to identify any specific evidence that the ConAgra defendants neglected to consider in its review of her claim.[1]

Dr. Lundquist and Dr. Sanders did not conduct an in-person examination with Ms. Thompson as part of their review, while Dr. Walton and Dr. Adams did. Ms. Thompson argues that the ConAgra defendants acted arbitrarily and capriciously by relying on Dr. Lundquist and Dr. Sanders's reports, as opposed to the reports of those who actually saw her (Dkt. No. 47, at 9).

The Court disagrees. "[T]reating physicians are not automatically entitled to special weight in disability determinations under ERISA." *Midgett v. Washington Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009). If a treating physician concludes that his or her patient is disabled, but a reviewing physician disagrees, "the plan administrator has discretion to find that the employee is not disabled unless 'the administrative decision lacks support in the record, or . . . the evidence in support of the decision does not ring true and is . . .

---

[1] The ConAgra defendants contend that CIGNA "also did not abuse its discretion by placing little to no weight on the Social Security Administration's decision to award Plaintiff disability benefits" (Dkt. No. 50, at 27). The Court agrees under the facts and circumstances of this case, as "SSA disability awards are not binding on ERISA plan administrators." *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 833 (8th Cir. 2014), *as corrected* (July 15, 2014).

overwhelmed by contrary evidence.'" *Coker v. Metro. Life. Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002).

Dr. Lundquist and Dr. Sanders concluded that Dr. Walton and Dr. Adams' opinions regarding Ms. Thompson were not supported by sufficient objective medical evidence (AR 187-188, 199).  Both identified the basis of their conclusion.  The Court finds that Dr. Lundquist and Dr. Sanders's opinions are not overwhelmed by contrary evidence in the record, meaning that the ConAgra defemdamts' reliance on their opinions was not arbitrary and capricious.

Ms. Thompson also argues that "ConAgra devoted its entire review of Mrs. Thompson's claim to an analysis of peripheral mental health conditions and subsequently used that review in an attempt to gain traction for denial of her claim"  (Dkt. No. 51, at 3).  As a preliminary matter, the Court notes that Ms. Thompson herself identified mental health issues as a major basis for her disability claim.  When asked why she could not work in her own or any occupation, Ms. Thompson wrote, "I can no longer deal with the stress of deadlines and demands of large business group.  My attention span is limited.  My memory no longer can retain important facts and details" (AR 364).  When asked to identify the primary mental or physical conditions preventing her from working, she wrote, "[h]ypertension – from stress and anxiety.  Need to keep my heart rate stable.  Tire easily.  I could not work an 8 hour day without many breaks and resting" (AR 364).  In her own words, Ms. Thompson identifies both mental and physical disabilities preventing her from working.  Therefore, the Court concludes that the ConAgra defendants' review of her mental health issues was not a pretext for denying her claim.

The record contradicts Ms. Thompson's assertion that the ConAgra defendants ignored Ms. Thompson's physical limitations in its review.  In its initial review, the ConAgra defendants' rehabilitation specialist reviewed and considered Ms. Thompson's physical restrictions and

limitations (as provided by Dr. Walton) in completing the transferable skills analysis (Dkt. No. 50, at 9-10). On appeal, the ConAgra defendants enlisted Dr. Lundquist for the specific purpose of analyzing Ms. Thompson's disability eligibility based on her physical condition (Dkt. No. 50, at 14-15). In his report, Dr. Lundquist addresses Dr. Walton's professional opinion about Ms. Thompson's physical condition and analyzes whether the opinion is supported by sufficient evidence (AR 199). The ConAgra defendants did not ignore Ms. Thompson's physical limitations in its review.

The ConAgra defendants engaged in additional procedures that the Eighth Circuit Court of Appeals has found contribute to a "full and fair review." After Ms. Thompson appealed its initial denial of her claim, the ConAgra defendants "referred the appeal to a different decisionmaker (sic)" and "did not afford deference to the initial decision" (AR 103-04); *Prezioso*, 748 F.3d at 805. The two reviewing physicians, Dr. Lundquist and Dr. Sanders, were neutral and qualified, and the ConAgra defendants obtained an additional report from a qualified vocational expert as part of its initial evaluation. In accordance with the Eighth Circuit's analysis in *Prezioso*, the Court finds that this was a full and fair review.

The ConAgra defendants' decision was supported by substantial evidence, and the Court rejects Ms. Thompson's argument regarding the sufficiency of Dr. Lundquist and Dr. Sanders's reports. Both physicians reviewed all medical documentation submitted by Ms. Thompson in support of her claim. Both found that the evidence was insufficient to support finding that Ms. Thompson's mental and physical condition at the time of the review rendered her unable to work in certain occupations (Dkt. No. 50, at 22, 26). The Plan requires Ms. Thompson to submit proof showing that she qualifies as being disabled. Both physicians specifically found that she failed to meet that burden with objective medical evidence, and both physicians explained why they

believed such evidence was lacking.   The Court finds that their reports did not "summarily dismiss" Dr. Walton and Dr. Adams's opinions.

For these reasons, the Court finds that the ConAgra defendants' decision was reasonable because it was based on substantial evidence and was not arbitrary and capricious.   The ConAgra defendants conducted a full and fair review.   Under the lenient abuse of discretion standard, the Court will not disturb the ConAgra defendants' decision.

IV.     **Request for Remand**

After the administrative record closed on November 9, 2013, Ms. Thompson suffered a significant relapse in her condition (Dkt. No 47, at 11).   She claims that her medical records for the issues arising after the administrative record closed "vindicate Dr. Walton's opinion and prove conclusively that Mrs. Thompson's conditions are totally disabling" (Dkt. No. 47, at 12). She asks the Court to not dismiss her complaint if it finds that the ConAgra defendants' decision was reasonable, but rather "remand the case to the plan administrator, in order to consider the additional medical evidence related to her ongoing cardiac condition" (Dkt. No 47, at 12).

The Court's role in reviewing the ConAgra defendants' decision is to determine whether it was reasonable when made.   In doing so, the Court "must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales."   *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999).   The Court concludes that the ConAgra defendants' decision regarding Ms. Thompson's disability eligibility was reasonable and that the ConAgra defendants conducted a full and fair review.   Therefore, the Court's role in this matter is complete and remand would be an inappropriate extension of its authority.

## V.      Conclusion

For the foregoing reasons, the ConAgra defendants' motion for judgment is granted.  To the extent the ConAgra defendants move for attorneys' fees and costs, their request is denied without prejudice.  The ConAgra defendants may refile a request for fees and costs with evidentiary support.  Ms. Thompson's third amended complaint is dismissed with prejudice, and her request for remand is denied.

So ordered this 7th day of October, 2016.

_____
Kristine G. Baker
United States District Judge